UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JAMIE SCOTT VACHON, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | No. 2:15-cv-112-JHR |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| *Acting Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

*MEMORANDUM DECISION*[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of returning to past relevant work as a security guard or, in the alternative, performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the administrative law judge erred in (i) failing to comply with Social Security Ruling 00-4p ("SSR 00-4p") before relying on flawed vocational testimony, (ii) omitting a bilateral handling limitation, (iii) failing to find severe impairments of status-post rotator cuff repair and status-post left knee arthroscopy, (iv) ignoring the plaintiff's obesity, in violation of Social Security Ruling 02-1p ("SSR 02-1p"), and (v) discrediting the opinions of treating source Douglas G. Smith, M.D.,

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted his administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement.  Oral argument was held before me on September 18, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.  The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment.  ECF No. 12.

and agency examining consultant Edward J. Harshman, M.D. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (ECF No. 8) at 2-7. I find no reversible error and, accordingly, affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2015, Finding 1, Record at 16; that he had a severe impairment of degenerative disc disease, Finding 3, *id*. at 17; that he had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he could occasionally climb ramps and stairs, occasionally balance, stoop, kneel, and crouch, occasionally reach overhead with his right upper extremity, and occasionally handle with his dominant right hand, could never climb ladders, ropes, or scaffolds, could never crawl, and could not be exposed to vibrations, hazards, or irregular, sloping surfaces, Finding 5, *id*.; that he was capable of performing past relevant work as a security guard, which did not require the performance of work-related activities precluded by his RFC, Finding 6, *id*. at 21; that, in the alternative, considering his age (44 years old, defined as a younger individual, on his alleged disability onset date, July 5, 2011), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, *id*. at 22; and that he, therefore, had not been disabled from July 5, 2011, through the date of the decision, September 3, 2013, Finding 7, *id*. at 23. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 and, in the alternative, Step 5 of the sequential evaluation process. At Step 4, the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62")*,* reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

At Step 5 of the sequential evaluation process, the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the

commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Failure To Comply with SSR 00-4p

The administrative law judge determined that, consistent with the testimony of a vocational expert present at hearing, the plaintiff was capable of performing past work as a security guard as it "actually and generally [was] performed." Record at 21. In the alternative, he found that the plaintiff was capable of performing other work, including the representative job of Cashier II, Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") § 211.462.010. *See id*. at 22. He stated, "Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the [DOT]." *Id*.

SSR 00-4p provides, in relevant part:

The Responsibility To Ask About Conflicts

When a VE [vocational expert] or VS [vocational specialist] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:

• Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and

• If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

Explaining the Resolution

> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2015), at 246.

The plaintiff complains that, in violation of SSR 00-4p, the administrative law judge failed to make the required inquiry in circumstances in which there was an apparent conflict between the DOT description of the security guard and cashier jobs as requiring frequent handling and the administrative law judge's finding that the plaintiff could only occasionally handle with his dominant right hand. *See* Statement of Errors at 2-3. He contends that, while the vocational expert provided some explanation for the apparent conflict with respect to the cashier job, the administrative law judge could not rely on it because it was elicited on questioning by the plaintiff's counsel. *See id*.

As the commissioner argues, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 9) at 2-5, any SSR 00-4p error was harmless. "A claimant is not disabled at step four if the claimant can perform his past relevant work either as the claimant actually performed it or as generally performed in the national economy." *Malusa v. Astrue,* No. CV 07-655-TUC-CKJ (CRP), 2009 WL 2707219, at *14 (D. Ariz. Aug. 25, 2009) (citations and internal quotation marks omitted). The administrative law judge found that the plaintiff could do his past work as a security guard not only as generally performed (that is, as described in the DOT) but also as he actually performed it. *See* Record at 21. The plaintiff himself had described that job as requiring no handling. *See id*. at 238, 242. This rendered any inconsistency between the DOT description and the plaintiff's handling restriction irrelevant. *See, e.g., Pruitt v. Commissioner of*

5

*Soc. Sec.*, __ Fed. Appx. __, No. 12-35399, 2015 WL 2345075, at *2 (9th Cir. May 18, 2015) (any inconsistency between a claimant's RFC and DOT job description irrelevant when administrative law judge found claimant could return to past relevant work as actually performed).

At oral argument, the plaintiff's counsel challenged the commissioner's reliance on his client's ability to return to the security guard job as actually performed, pointing out that the administrative law judge never so much as mentioned the plaintiff's work history report, let alone compared the plaintiff's RFC against the mental and physical demands of his security guard job as actually performed, as required by SSR 82-62.

The plaintiff's counsel asserted that the mere fact that his client described the job, in his work history report, as entailing no handling could not demonstrate that the SSR 00-4p or SSR 82-62 errors were harmless because, in his (counsel's) experience, claimants typically are not represented by counsel when they complete such forms and sometimes misunderstand them, providing erroneous responses. He contended that it seemed unlikely that a security guard job entailed no handling whatsoever, suggesting that the administrative law judge should have explored the issue further at hearing before relying on the responses given in the report.

Nonetheless, as counsel for the commissioner rejoined, it is the claimant's burden Step 4 to prove his or her inability to return to past relevant work. *See, e.g.*, 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen*, 482 U.S. at 146 n.5. I decline to assume that, merely because the plaintiff may have been unrepresented by counsel when he completed the work history report, he provided unreliable information. Moreover, the plaintiff was represented by counsel (albeit different counsel) at his hearing. *See* Record at 32. "When a claimant is represented, the ALJ [administrative law judge] should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored." *Faria v.*

*Commissioner of Soc. Sec.,* No. 97–2421, 1998 WL 1085810, at *1 (1st Cir. Oct. 2, 1998). That was the case with respect to any need to develop the record at hearing as to the requirements of the plaintiff's past work.

### B.  Failure To Include Bilateral Handling Restriction in RFC

The plaintiff next complains, and the commissioner concedes, that the administrative law judge erred in failing to find a bilateral handling limitation despite his purported reliance on the opinions of agency nonexamining consultants who found such a limitation. *See* Statement of Errors at 3-4; Opposition at 6-7. The plaintiff asserts that the error was not harmless because it reasonably could have affected the vocational expert's testimony. *See* Statement of Errors at 4. As the commissioner points out, *see* Opposition at 7, the plaintiff fails to explain how this could have been so. Regardless, as the commissioner argues in the alternative, *see id.*, the error is harmless in that the administrative law judge found that the plaintiff could return to his past relevant work as a security guard as actually performed, which required no handling.

### C.  Failure To Find Severe Left Knee, Right Shoulder Impairments

The plaintiff argues that the administrative law judge further erred in failing to find his left knee and right shoulder impairments severe or even analyze whether they were severe, although he mentioned them in passing. *See* Statement of Errors at 4. He asserts that the record "amply supports, and the Decision in fact concedes, that [he] met his *de minimus* burden of establishing these severe impairments[,]" and their omission was not harmless because "proper evaluation . . . could lead to additional disabling limitations, including additional upper extremity limitations and limitations on standing, walking and ability to complete a normal workday." *Id*. at 5. He points out that such restrictions were assessed by both Drs. Smith and Harshman. *See id*.

Nonetheless, "[i]f error occurred at step 2, remand is only appropriate when the claimant can demonstrate that an omitted impairment imposes a restriction beyond the physical and mental

7

limitations recognized in the Commissioner's RFC finding, and that the additional restriction is material to the ALJ's [administrative law judge's] 'not disabled' finding at step 4 or step 5." *Dunning v. Colvin*, No. 2:14-cv-00401-JCN, 2015 WL 4139618, at *2 (D. Me. July 9, 2015). *See also, e.g., Shinseki v. Sanders,* 556 U.S. 396, 409 (2009) (a claimant bears the burden to demonstrate harmful error in an agency's determination).

As the commissioner notes, *see* Opposition at 8, although the administrative law judge did not consider, at Step 2, whether these impairments were severe, he stated, at Step 4, that his RFC determination took them into account, *see* Record at 21. He did, indeed, rely on the opinions of agency nonexamining consultants who took those conditions into account and assessed corresponding limitations. *See id*. at 20, 72, 100-01.

To the extent that the plaintiff relies on the Smith and Harshman opinions for the proposition that these impairments caused even greater restrictions than included in the RFC determination, I conclude, for the reasons discussed below, that the administrative law judge supportably rejected those opinions.

The plaintiff, thus, fails to demonstrate that any error in failing to consider his knee or shoulder impairments at Step 2 would have been material to the administrative law judge's findings at Steps 4 or 5.

### D.  Failure To Comply with SSR 02-1p

The plaintiff next contends that, although he was diagnosed with obesity, the administrative law judge failed even to consider it, in violation of SSR 02-1p. *See* Statement of Errors at 5-6. He suggests that the error was not harmless in that, (i) although agency nonexamining consultants acknowledged his obesity, they failed to evaluate whether it was medically determinable or severe, and (ii) SSR 02-1p specifically notes that obesity can exacerbate a musculoskeletal impairment

8

(such as his) and lead to an inability to complete a full-time work schedule ("as posited by Dr. Smith"). *Id*. at 5-6.

The commissioner argues, and I agree, that the plaintiff falls short of demonstrating prejudicial error. *See* Opposition at 8-10; *Shinseki*, 556 U.S. at 409; *Dunning*, 2015 WL 4139618, at *2. A claimant's reliance on SSR 02-1p's descriptions of functional limitations that *can* be caused by obesity is insufficient to demonstrate reversible error. *See, e.g., Sessions v. Colvin*, No. 2:14-cv-384-JHR, 2015 WL 4429255, at *3-*4 (D. Me. July 20, 2015). While, in this case, the plaintiff also cites the Smith opinion, *see* Statement of Errors at 6, as the commissioner points out, *see* Opposition at 9-10, Dr. Smith neither mentioned any problem with, or treatment for, obesity in any treatment note for the period from the plaintiff's alleged onset date of disability, July 5, 2011, forward, *see* Record at 622-30, 633-36, 648-51, nor mentioned obesity or attributed any limitations to it in his RFC opinion dated July 20, 2011, *see id*. at 473-76. The Smith opinion, hence, fails to demonstrate the prejudicial omission of obesity-related restrictions.

### E. Error in Handling of Smith and Harshman Opinions

The plaintiff finally complains that the administrative law judge erroneously discredited the opinions of Drs. Smith and Harshman. *See* Statement of Errors at 6-7.

Dr. Smith completed an RFC questionnaire dated July 5, 2011, and a more detailed statement of the nature and severity of the plaintiff's physical impairments dated July 20, 2011. *See* Record at 473-76, 652.

In his July 5, 2011, opinion, Dr. Smith indicated, *inter alia*, that, as a result of the plaintiff's impairments (spondylolisthesis, lumbar radiculopathy, cervical radiculopathy, and a meniscus tear), he could sit for only zero to two hours in an eight-hour workday, stand/walk for only zero to two hours, frequently lift less than 10 pounds, occasionally lift 10 pounds, and rarely lift 20 pounds, occasionally finger, rarely grasp, handle, or stoop, and never crouch. *See id*. at 652. He stated that

9

the plaintiff's pain would frequently interfere with the attention and concentration needed to perform even simple work tasks and that he would be absent more than four days per month as a result of his impairments or treatment for them. *See id*.

Dr. Smith assessed identical sitting, standing/walking, and lifting restrictions on the basis of the same impairments in his July 20, 2011, opinion. *See id*. at 473-74. He also indicated, *inter alia*, that the plaintiff had significant limitations in doing repetitive reaching, handling, fingering, or lifting and could not stoop, kneel, pull, or bend. *See id*. at 474-75.

In a report dated February 17, 2012, agency examining consultant Dr. Harshman stated, in his concluding section titled "Analysis of Results:"

> The [plaintiff] mentions a motor vehicle collision with loss of consciousness and says that there is a loss of memory also. Osteopenia has not been investigated. Knees have looseness. Internal fixation is present in the back. The [plaintiff] getting on and off of the exam table and becoming red in the face while getting off is suggestive of genuine pain that is not controlled even with oxycodone.
>
> The cane is necessary; knees are precarious and balance is bad. He can stand with the cane for five minutes (right hand will tire otherwise), sit with frequent breaks, walk 30 feet (by his statement), carry objects of trivial weight in his left hand, reach upward without full right shoulder external rotation (history), and do limited fine finger movements (upper limbs strength, tremor). Balance and back issues prevent stooping, crouching, crawling, and climbing stairs or ladders. Travel as a passenger is not restricted; his ability to drive with substantial musculoskeletal pain is suspect. Speech and comprehension have no obvious problems. Additional information, if it becomes available, may lead to work restrictions more stringent than those I list here.

*Id*. at 620.

The administrative law judge explained that he weighed the opinion evidence as follows:

> I find most reliable the DDS [Disability Determination Services] findings restricting the [plaintiff] to light work with occasional postural restrictions [that is, the RFC opinions of agency nonexamining consultants Richard T. Chamberlin, M.D., dated September 30, 2011, and Donald Trumbull, M.D., dated February 23, 2012, *see* Record at 71-73, 99-102]. The [plaintiff's] attorney was unable to identify any evidence subsequent to the D[D]S opinion that erodes the reliability of the DDS opinion. While he cited Dr. Harshman's report, I questioned the independent medical expert [Peter B. Webber, M.D.] at length about this report,

and ultimately give Dr. Harshman's report limited evidentiary weight. [Dr. Webber] testified parenthetically that there are no clinical findings that erode[] the DDS opinion; for example, the [plaintiff] demonstrated full strength on examination and was able to walk on his tiptoes, radiological studies demonstrated no instability at L5, and only mild foraminal narrowing. He testified further that EMG testing did not reveal any abnormality, including neuropathy and radiculopathy. Lastly, although the [plaintiff] appeared at hearing with a cane, [Dr. Webber] testified there was no basis in the record for the use of a cane.

[Dr. Webber's] opinion is consistent with the evidence of record of clinical examination demonstrating full muscle strength, stable imaging results, and normal neurological testing.

I accord some evidentiary weight to the opinion of the treating physician [Marc Christensen, M.D.] that the [plaintiff] should avoid bending, lifting, twisting, pulling, pushing, driving, and working for six weeks after his June 2011 surgery [an L5-S1 lumbar laminectomy and fusion, *see* Record at 454, 483]. The opinion benefits from the doctor's expertise as a spinal surgeon and relationship with the [plaintiff]. However, the opinion's short duration suggests that the [plaintiff] would not experience the restrictions for 12 months.

Dr. Smith receives little weight for his treating opinion that the [plaintiff] is unable to sit, stand, or walk for a combination of eight hours per workday. The doctor benefits from his longitudinal relationship with the [plaintiff], but the opinion is inconsistent with the normal testing results noted above. An additional restriction to lifting no more than 20 pounds appears inconsistent with the [plaintiff's] decision to lift a washer and dryer.

The [plaintiff's] representative focused on Dr. Harshman's examining opinion that the [plaintiff] could stand for five minutes with a cane, sit with frequent breaks, and walk 30 feet. The doctor provided complete bans on multiple postural activities. Although Dr. Harshman based his opinion on an examination of the [plaintiff], the limitations appear overly restrictive when compared to those of treating surgeon Dr. Christensen. Additionally, Dr. Harshman's focus on the [plaintiff's] use of a cane during his examination was eroded by the well-supported opinion of [Dr. Webber].

*Id*. at 20-21 (citations omitted).

The plaintiff first argues that the administrative law judge's separate errors in failing to find bilateral upper extremity limitations and certain severe impairments undercut his rejection of the Smith and Harshman opinions. *See* Statement of Errors at 6. However, those errors are harmless, for the reasons discussed above.

11

He next contends that the administrative law judge erred in rejecting the Smith opinion on the bases of its inconsistency with "normal test results," which constitutes an insufficient reason to reject a treating source opinion on limitations caused by pain, and the plaintiff's decision to attempt to move a washer, which was perhaps an imprudent choice that exacerbated his injury but was not indicative of greater work capacity. *Id.* For the proposition that the focus on test results was error, he cites 20 C.F.R. §§ 404.1527, 404.1529, 416.927 [erroneously referred to as 416.917], and 404.929. *See id.*

Nothing in the cited regulations bars an administrative law judge from relying on inconsistency with the objective medical evidence as a reason for rejecting a treating source opinion on limitations caused by pain. To the contrary, the regulations indicate that consistency with the objective medical evidence, as well as consistency with the record as a whole, are important factors in determining whether to accept a medical source's opinion and/or credit a claimant's allegations of pain. *See* 20 C.F.R. §§ 404.1527(c)(2)-(4), 404.1529(c)(2), 416.927(c)(2)-(4), 416.929(c)(2). The regulations do promise that the commissioner "will not reject [a claimant's] statements about the intensity and persistence of [the claimant's] pain . . . solely because the available objective medical evidence does not substantiate [those] statements." *Id.* §§ 404.1529(c)(2), 416.929(c)(2). However, the administrative law judge did not reject the *plaintiff's allegations* solely on that basis. *See, e.g.,* Record at 20 (discussing plaintiff's activities in deeming his allegations not entirely credible).

With respect to treating source opinions, I find one relevant promise in the cited regulations: that an administrative law judge "will always give good reasons in [his or her] notice of determination or decision for the weight [he or she] give[s] [the claimant's] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). This promise was kept. As the

commissioner observes, *see* Opposition at 10-11, inconsistency with objective medical evidence and/or with the bulk of the evidence of record is a good reason to reject a treating source opinion, *see, e.g., Ramos v. Barnhart*, 119 Fed. Appx. 295, 296 (1st Cir. 2005) (administrative law judge properly gave little weight to treating source opinion that was "inconsistent with the bulk of the medical evidence"); *Williams v. Colvin*, No. 1:14-CV-00034-JCN, 2015 WL 127883, at *3 (D. Me. Jan. 8, 2015) (administrative law judge did not err in giving little weight to opinions of treating physicians that were not supported by medical record, including clinical findings).  Here, as counsel for the commissioner noted at oral argument, the administrative law judge relied, *inter alia*, on normal findings *postdating* Dr. Smith's July 2011 opinions. *See, e.g.*, Record at 19.

Although, in her opposition, the commissioner does not directly address whether the plaintiff's attempt to lift a washer or dryer in itself constituted a good reason for rejecting the Smith opinion, she correctly observes that, in the wake of that incident, both Drs. Christensen and Smith found that the plaintiff retained full strength and intact sensation. *See* Opposition at 11; Record at 483, 633-34.  While an attempt to lift a washer or dryer, especially one that results in back pain, does not demonstrate that a claimant possesses the capacity to lift something that heavy, the administrative law judge reasonably could have inferred that the fact that the plaintiff attempted such a feat called into question Dr. Smith's opinion that he could rarely lift even 20 pounds.  As counsel for the commissioner noted at oral argument, a treating source opinion cannot be accorded controlling weight, even if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," if it is inconsistent with other substantial evidence of record; "for example, when a treating source's report contains an opinion that the individual is significantly limited in the ability to do work-related activities, but the opinion is inconsistent with the statements of the individual's spouse about the individual's actual activities[.]"  Social Security Ruling 96-2p,

reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2015) ("SSR 96-2p"), at 112-13.  The administrative law judge supportably found such an inconsistency here.

Turning to the Harshman opinion, the plaintiff argues that the sole reason provided for rejecting it – that it was eroded by Dr. Webber's testimony at hearing – is incorrect.  *See* Statement of Errors at 6-7.  He asserts that Dr. Webber, who, unlike Dr. Harshman, did not examine him, simply testified that some of Dr. Harshman's limitations were not explained.  *See id*.  However, as the commissioner points out, *see* Opposition at 12, the administrative law judge rejected the Harshman opinion because he deemed it inconsistent with the temporary restrictions assessed by the plaintiff's treating back surgeon, Dr. Christensen, and because Dr. Webber testified that there was no objective basis in either Dr. Harshman's report or in the record generally for the ongoing use of a cane, *see* Record at 21 (decision), 56-57 (Webber testimony), 456 (Christensen restrictions on discharge).  Indeed, as counsel for the commissioner observed at oral argument, while Dr. Smith indicated as of July 2011 that he had prescribed a cane for the plaintiff, *see id*. at 652, he removed that prescription in December 2011, *see id*. at 629.

At oral argument, the plaintiff's counsel contended that Dr. Christensen's restrictions simply pertained to the plaintiff's recovery from surgery and were not a commentary on his ongoing limitations.  Yet, the administrative law judge reasonably construed Dr. Christensen's temporary post-surgical restrictions as suggesting that Dr. Christensen expected the plaintiff, following his recovery from surgery, to have even fewer functional limitations.  In turn, the administrative law judge reasonably perceived an inconsistency between the Christensen restrictions and those assessed by Dr. Harshman approximately eight months later.

I find no error in the rejection of either the Smith or Harshman opinions.

## II.  Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 29th day of September, 2015.

>                             /s/  John H. Rich III
>                             John H. Rich III
>                             United States Magistrate Judge